Good morning. Morning. May it please the court, counsel. My name is Fabian Valencia. I'm the attorney for Jose Vera and we are here today to determine whether under the Federal Torts Claims Act my client's pleadings were sufficient to to overcome a motion to dismiss. The main focus that we will have today as far as the factual claims is the element of duty under the negligence claim. The reason for that is because we're claiming that the USA had control. They also maintained, designed, and kept up the road, the Bureau of Indian Affairs Road 140, on which my client, due to the fact that there were no speech signs or speech signs, went off the road and fell down a 60-foot embankment, about six stories high, down an embankment. If you get jurisdiction and if it is determined that the road is under the U.S. control, then you would have a good story, I think, in terms of what happened here. But don't we have to get past those more technical issues first and that is, under whose control is this road? Good point, Your Honor. The defendant's or Pele's motion to dismiss came as a motion to dismiss for not having subject matter jurisdiction. The court below looked at it as a factual subject matter jurisdiction challenge, as opposed to a facial where we just look at the pleadings. Under the factual challenge, the district court, and actually the defense, relies on this court's decision and safe air for everyone versus Meyer. The one point that I want to make on that case when this court decided it, the district court heard evidentiary . . . had an evidentiary hearing and heard testimony from 23 witnesses. In this case, we heard testimony from one witness and we did not have the opportunity to cross-examine that witness at all. I've got a question as to what you are disputing or what you would hope to discover if you were allowed further discovery. Are you in any doubt or are the parties in any doubt as to where this accident occurred in relation to the line between the part of the road that's actively managed by the federal government and the part of the road that's actively not managed by the federal government? Is there some dispute as to where that accident took place in relation to that line? There is, Your Honor. Why was that not disputed in the district court? Because as I read the pleadings in the district court, you weren't really making that argument. Yes, Your Honor. At that point, I was just asking the court to give me the opportunity to even inspect this place. It's a closed section of the reservation, so the appellee is the only one that has access to this place. We were not even able to get experts out there or anyone to look at whether or not the appellee's witness was correct in making . . . So just to be more concrete then, in your view, the scene of the accident was close enough to these divisions between ownership and control to raise a factual issue? Not necessarily, Your Honor. The road is listed on this National Tribal Inventory, correct? Actually, Your Honor, we don't know. That's actually one of the things. The National Inventory is under the control of the Bureau of Indian Affairs, and one of our arguments is that they could have provided this to the court, said, here, this is the inventory. This road is not on this inventory, but they did not. They provided the treatises of the tribal nation. So instead of the court relying on the actual court documents that either made the U.S. responsible for maintaining, designing, and upkeeping the road, they provided other material that I believe is not relevant. Whether or not the Bureau of Indian Affairs was responsible for that road is on that inventory, and we do not have access to that inventory. Assuming we could get past the fact that the VERA didn't comply with the technicalities of Rule 56D, and this motion on What precisely is the discovery that you would seek at this stage, if you were given the chance? So we would, first of all, look at that inventory. Look at that inventory, the historical aspects of that inventory, where this road was at the time of the accident, and we would also look at what contracts the Bureau of Indian Affairs had with the tribe as far as maintaining. I mean, the road is Bureau of Indian Affairs. It's Bureau of Indian Affairs Road 140. We're saying that they had responsibility to design, maintain, put signs on it. So we need to look at... Yeah, but I mean, there are two arguments going on here at once. One of them is, and I saw this in your briefing here and in the district court, that because of the relationship between the Bureau of Indian Affairs and this entire road, the Bureau of Indian Affairs should be held responsible, such as the Federal Tort Claims Act comes into play. And then there's a second argument that says, well, even if the entire road is not within the control of the BIA for purpose of the Federal Tort Claims Act, part of it is. It's that second argument that may be a winner for you, depending on where the accident took place, but it's that second argument that seemed not to be made in the district court and is made only partially here. But that's the only argument, it seems to me, in the district court that's a potential winner for you. Thank you for pointing that out, Your Honor. So we're saying that if the U.S. was responsible for those speed signs and those curve signs where my client went off the road, then the U.S. is, there's jurisdiction and there's a duty. Right, but that, in my view, would depend upon what portion of the road the BIA has taken over. Because part of the So the only basis for us, assuming that the part of the road was left to the tribe and part of it was the U.S.'s, is this one witness's testimony. And again, very limited information without the opportunity of being able to cross examine him. So we, our main argument is that we need to find out who was responsible for putting up these signs. Our second argument, as Your Honor, I mean, if it isn't your real argument as to who has supervision and control over that road. Yes, Your Honor. Which is a legal question ultimately. Yes. Okay. Beyond looking at a factual attack on, as far as a subject matter jurisdiction motion, whenever the cases are so intertwined with the issue of jurisdiction in a case, we actually go back to the standard of a facial attack on a subject matter jurisdiction motion to dismiss. And in that sense, the allegations of the plaintiff are taken as true. And basically, you have to, you basically have to go through discovery. This is what we, what I argue in the case of Kearns, which is very, very analogous to what we have here. Basically under the Virginia state law, they were looking at whether or not an employee of the federal government was acting within their scope of employment when he caused a car accident. So the first question there was jurisdiction. If they had, if they did have, if he was acting under his employment, then the U.S. would be, have a duty to the plaintiff in that case. And jurisdiction hinged on that question. This is the the U.S. had a duty to my client. If they did, then jurisdiction attaches, subject matter jurisdiction attaches against the U.S. If they did not have control and did not oversee this road, then they do not have, then there is no subject matter jurisdiction for them. Counsel, let me ask you a question, if I may. Assuming, for sake of argument, that the panel decided to vacate the dismissal and remand the case so that there could be some modicum of discovery before any renewed motions were filed, what specifically would be the discovery that your client would, would seek and with whom? So we would, we would seek the, the inventory that lists the roads that the Bureau of Indian Affairs is responsible for maintaining. We would also ask for any contracts that govern the relationship between the Bureau of Indian Affairs and the tribe as it relates to that road. We would also seek discovery to get people to actually see where this road, where this curve is and determine who was responsible for control of this road. So those would be the main things we would, we would be looking at. Okay, then why could your client either not present such information by affidavit at the time of the dismissal motion or could they have presented it? Good question, Your Honor. So the, the challenges that we had were hands-tied because we were not able to go onto this road, onto this section of the tribal. It's a closed section. Also the, the inventory that were, that were, that decides whether or not the Bureau of Indian Affairs has control over or has maintenance authority over this road is in the possession and control of the Bureau of Indian Affairs. They do not post this on their, on their website or they do not post it anywhere else. They have this right away but we did not get a chance. We, basically, the district court decided the, the factual issues based only on an affidavit of the, of the witness that the appellee put forth and we did not have a chance to cross-examine them. So that, the reason we were not able to get that information is because it was in the possession of the, of the appellee. It was resolved on the motion with the Bureau's side. And did you have oral argument on this? No, Your Honor. We asked for oral argument. We asked for an evidentiary hearing. That would have at least given us the opportunity to cross-examine the, the witness but we were not given that opportunity. Okay, thank you. The, the, what, what, an analogy that comes to mind is when a child does not clean his room and he's trying to prove to his parents that he did but he does not allow his parents to go into that room, there's, and, and he, and he relies on, on pictures of him cleaning the room from weeks before. This is, so this is a, this is kind of similar to what we have here. I wish my kids were so clever. So it's been a while since my kids were that age. So we're just looking to take a look at this room. We're just, we're just making, want to make sure that, that the child has cleaned it so it doesn't go get away with, with, with not cleaning it for a couple of days. Okay. Do you want to save the remaining time? Yes, Your Honor. Thank you, Your Honors. Good morning. Rudy Verschoor from the Eastern District of Washington, U.S. Attorney's Office on behalf of the United States. I think he just wants to look in the room. So why can't he do that? Well, several reasons. First of all, he didn't ask the motion to dismiss was a suggestion that said, discovery would help me determine who's liable. The, the cases that. Stated at that general level, level of generality. That's probably right. He, he did. Here's the quote, discovery will shed light on whether the USA is liable. That's on plaintiff's response brief, page five. That's probably right. It's true. Why is that not a fair statement? Well, for several reasons. This court has, has established that the burdens on the party seeking discovery to put forth sufficient facts to show that the evidence sought actually exists. And this court went further. I'm sure the evidence does exist that will tell us where the accident occurred on the road and where the line on that road is between the part of the road for which the government has taken responsibility and the part of the road is left to the tribe. I'm sure that information exists. I'm sure it does too. So, okay. He didn't ask for it. And this court also said that discovery is necessary only if it's possible that a plaintiff can demonstrate the requisite jurisdictional facts if afforded the opportunity. And this court went further and said jurisdictional discovery was properly denied where plaintiff state only they believe discovery will enable them to demonstrate sufficient California business contacts. We get really down to what's happening. This listing of the road on the national tribal inventory. Was that document turned over? It was not. Okay. So we just know from various statements that it's listed there, right? Yes, that's true. But I think the, the, there's, well, so the answer to that is yes, we know only because there's statements made, right? Well, there, they are more than statements made. Let me just clarify. All right. The declaration of court, Kurt Friedenberg, which was submitted, he specifically identifies that the location of the accident after reviewing the police report was in the closed area of the Yakima reservation. Right. But if, but here, here's kind of the conundrum and I'm sure you can appreciate it. I read through his affidavit and he has the tribal resolutions. We don't have the tribal inventory sheet for us to look at. And he says, well, this is what happened. This is where it was, and it was a closed area. And your colleague here says, yeah, well, I can't even go there to find out. I can't get this information in the abstract. I could only get it in discovery. So why not have all this turned over and then you'd have a real summary judgment? Well, first of all, the fact of where the accident occurred, his client knows where the accident occurred. He knows if he was in a closed area or not. I mean, there's a gate, a guard station. Those are two different things. The client, the client knows where the accident occurred. I got that. But does the client know whether it was a closed area in the sense of under the control of the BAA or the control of the tribe? I don't think so. I believe he probably does because there's a gate there and the closed area is not open to the public. It's been closed since 1972. I may be misunderstanding some of the facts there. Closed in the sense of not open to the public, but is part of the closed road under the control of the BIA? It is not, and I think that's where the three tribal resolutions... That is to say the gate marks the dividing point between that part of the road that's controlled by the BIA and that part of the road that's left entirely to the tribe? I believe that's exactly correct. Do you believe so or do you know so? I believe so. I do not know for a fact. What's in the record to tell me that that's so? I do not have something in the record right now that says that. Well, why shouldn't there be? You have Mr. Frudenberg's affidavit. Here's the resolutions. We don't know. The district court didn't know. Is that the last in the line of resolutions? Are there other resolutions? Are those really the definitive documents that tell you the control? And it's kind of hard to think that a plaintiff has any ability to contest those. Maybe they're incontestable in the end, but how would a plaintiff contest those without some discovery? Well, I think the declaration is strong enough because Kurt Frudenberg is the BIA regional engineer who is familiar with this road system, where the closure is. I understand that. Experts are usually right. People make mistakes. Yes, but this is a fairly simple factual matter of whether the road is... If it were such a simple factual matter, why are you resisting handing over the documents by which the other side could check? We're not resisting it. It was never... That's exactly what you're doing. Well, the request was never made below. That for me is the problem. That is to say, it's based on a different theory. What was requested below was documents that would show that the entire road that directly under the control of the BIA and that left the tribe was sufficiently under control of the BIA that the BIA was responsible for the entirety of it. I mean, that was the theory below. And there was no specific request that said, I want to know where the line is between those two portions of the road because I've got a much better theory with respect to the part that's directly and completely under the control or sufficiently under control of the BIA. That request was not made in those terms and the district judge, not having it made in that way, said you lose. I mean, my problem is that the request wasn't made in any specific terms at all to put the district court on notice as to that theory. Not that the information wouldn't have been very useful. And if that request had been made specifically and the district court had denied it, this would be a very easy case. You'd be back in front of the with the documents that Plaintiff was requesting, is that the police report's available to anybody. I think we got it through just a Washington State Opens Records review. So that police report was available to everyone and I suspect, although I haven't looked at the website, that the Yakima Nation operates, but I'm sure it shows where the closed area is. So it's easy to determine whether that road is in the... Well, I have never found anything easy to determine when it comes to tribal lines and jurisdiction. So, I guess you're saying, well, he knows where his... The client knows where he was, that he was inside an area with a gate. Okay. Yes. So let's just take that as a given. But it probably doesn't answer the ultimate question of who had control over that. You might presume it's the tribe given the gate, but we don't know that and we have the affidavit, of the engineer. So it seems to me it comes down to a question of whether his request for discovery was too vague and therefore outside the rules, or whether it was enough to require someone to turn over some discovery. Isn't that really the bottom line here? Yes, we believe the request wasn't even a request, it was a to withstand what this court has said in the past about what's required, even on a motion to dismiss, ignoring the Rule 56D motion that's available in a summary judgment. We just don't think that there was a request here. And I don't believe the court even recognized that that was, because it wasn't a motion for discovery. Counsel, Judge Gould, if I could interject a question. So if the court didn't even recognize that there was a request being made, why isn't the just resolution of this case for us to vacate the judgment, send it back, ask the court to consider specific requests for discovery from the, from the appellant, and let you respond, let them have some reasonable discovery, and then bring the case to a resolution by summary judgment motions? Why are we having this giant debate over the theoretical possibilities of who's got the burden to say exactly what in this context? Two reasons. First of all, we believe that the documents that were submitted were dispositive of the issue. And second of all, because the issue was not raised below, it can't be raised now. I looked at the documents and I can't tell. I mean, I have a declaration, I read that, but that's just his view, and I can't tell because I don't have maps, I don't, the other side didn't have a chance to say, well, you know, he made this mistake. I mean, it's uncontested on the current record, I get that, but there are other things that I would expect to have in the record if I were really going to be confident in the answer. We were confident in our, in the motion we brought because we think that there was sufficient evidence for the court to rule as it did. Why didn't the record contain this tribal, National Tribal Road inventory showing this road? It's just an oversight. We thought that the evidence that were submitted with the record was sufficient. Thank you. If you have any other questions, I'll entertain those. Thank you. The only, only point I want to emphasize, as your Honor's already, I believe, inquired into, is that the gentleman that provided that affidavit is very knowledgeable. He actually runs the Bureau of Indian Affairs program. The challenge is that he didn't let us see the room, you know, as an analogy of a little kid. He showed everything except the inventory, which he presumably has access to, he presumably knows a lot about. He, in his affidavit, he says that he manages that section of the Bureau of Indian Affairs program. But your client was in the room. He knows where he was, correct? He was in the room at the time when he fell in his little brother's room, but now that he's trying to show his parents where he fell and what he fell on, the boy's not, the child is not allowing us to look into it. I think the analogy is breaking down here. If you have anything else to add, we're happy to hear it. The only thing that I do want to point out is that under the theory that whenever the merits are so intertwined with jurisdiction, we need discovery. This is a case of Kearns. This is adopted by the Fifth Circuit, Eleventh Circuit, Fourth Circuit, and even the Ninth Circuit in the 1983 case of Augustine v. U.S. I believe that it's good case law. We're just asking for discovery into this limited issue so that the court can make a proper decision. Unless Your Honor has any other questions, that's all I have. Thank you very much. Thank you, Your Honor. I thank both counsel for your argument this morning, for coming over from Yakima and Spokane. The case of Vera v. Bureau of Indian Affairs is submitted.
judges: McKeown, W. Fletcher, Gould